Joseph E. Cotterman (Bar No. 013800)
5232 West Oraibi Drive
Glendale, Arizona 85308
Telephone: (480) 353-0540
Cottermail@cox.net
*SubChapter V Trustee*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| In re: | In Proceedings Under Chapter 11 |
|---|---|
| SUNLIGHT RIVER CROSSING, LLC | Case No. 3:21-bk-04364-BKM |
| Debtor. | **MOTION FOR AN ORDER UNDER BANKRUPTCY CODE §§ 105(a) AND 363 AUTHORIZING THE SALE OF DEBTOR'S REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; and, REQUEST FOR EXPEDITED HEARING ON SALE AND BID PROCEDURES** |

I, Joseph E. Cotterman, the Subchapter V Trustee appointed in the case captioned above, pursuant to 11 U.S.C. §§ 105(a) and 363 of the United States Bankruptcy Code, and Rule 6004 of the Federal Rules of Bankruptcy Procedure, hereby request that the Court enter an order authorizing the sale of debtor Sunlight River Crossing's ("SRC") real and personal property (including, but not limited to, furniture and art) located at 700 North Page Springs Road in Cornville, Arizona (the "Property"), free and clear of all liens, claims, encumbrances, and interests, to the highest and best bidder as approved by the Court after appropriate marketing of the Property, with all liens to attach to the proceeds of sale with the same priority and validity as they attached to the Property (hereinafter the "363 Sale").

In connection with the 363 Sale, I also request a preliminary expedited hearing for the Court to consider and approve notice, bidding and sale procedures. For ease of reference, the portion of this Motion seeking authority to pursue a 363 Sale is referred to

as the "Sale Request"; the portion of this Motion seeking approval of notice, bidding, and sales procedures is referred to as the "Procedures Request". In support of the Sale Request and Procedures Request, I submit the following:

## JURISDICTION

1. On June 4, 2021 (the "Petition Date"), SRC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, and elected to proceed as a small business debtor under Subchapter V of Chapter 11. Initially, SRC operated its own business as debtor-in-possession pursuant to §1184.

2. On August 11, 2022 at ECF docket number 234, the Court entered its Minute Entry Order removing SRC as debtor in possession, and expanding my role, authority, and duties in this case pursuant to §1183(b)(5) (the "Trustee Order").

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Sale Request and Procedures Request presented in this Motion constitute a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

5. The statutory bases for the relief requested herein are §§ 105(a), 363 and 365 of the Bankruptcy Code.

## THE FACTUAL BACKGROUND AND PURPOSE OF THIS MOTION

6. As noted above, SRC filed its petition on June 4, 2021.

7. On September 2, 2021, SRC filed its Chapter 11 Small Business Subchapter V Plan at ECF docket number 48 (the "First Plan").

8. The primary secured creditor in this case, 988, LLC ("988") and SRC have been locked in an intractable cycle of litigation in this case, as reflected in ECF docket numbers 44 (988's request for a 2004 examination of SRC's principal); 55 (988's request for document production under 2004); 57 (SRC's application for a 2004 examination of 988's principal); 63 (988's objection to SRC's First Plan); 86 (SRC's 2004 request to depose Farshid Paydar); 88 (988's request for an order directing me to investigate SRC); 91 (988's request for a 2004 examination of Heidi Nordlund); 95 (my limited joinder in

2

the motion directing an investigation of SRC; 97 (SRC's response to 988's motion directing an investigation of SRC); 103 (the Order granting 988' motion and directing me to investigate SRC); 110 (SRC's request for a 2004 examination of Larry Nevitt); 112 (SRC's request for a 2004 examination of Russ Lyon, LLC); 130 (988's motion to convert, dismiss, or remove debtor in possession (hereinafter the "988 Motion")); 138 (SRC's response to the 988 Motion); 139 (my statement regarding court-ordered investigation of SRC); 142 (988's reply in support of the 988 Motion); and, various docket entries reflecting the procedural and evidentiary proceedings and other filings regarding the 988 Motion, including ECF docket numbers 147, 161, 166, 179, 186, 197, 207, 210, 211, 214, 215, 216, 217, and 233.

9. In addition to the foregoing, the Court has been forced to address SRC's engagement and payment of various professionals without seeking prior approval of either their compensation or employment. See, ECF dockets number 172-174 (attorney Tony Collum); 183-185 (Jade accounting); 188-194 (Sefton Engineering) 218-224 (entries related to the foregoing applications); 233 hearing on the foregoing applications).

10. As noted above, on August 11, 2022, the Court entered the Trustee Order removing SRC as debtor in possession and expanding my role, authority, and duties in this case pursuant to §1183(b)(5).

11. At various hearings, most recently the status hearing held August 23, 2022 (ECF docket number 241), counsel for SRC has informed the Court that SRC will be filing an amended plan. While I believe an amended plan will be filed prior to the October 25th status hearing, as of the date of this Motion, no amended plan has yet been filed.

12. Currently, the approved, or incurred but not yet approved, administrative expenses in this case exceed $225,000 – approximately $112,000 in approved fees to the Allen, Barnes firm (ECF docket 72, )[1]; approximately $62,000 in approved fees to SRC's

---

[1] Allen, Barnes' approved fees were higher than this figure, which represents approved but unpaid fees as related by Mr. Allen in response to my inquiry.

3

current counsel, plus fees incurred and accruing since July 1, 2022; approximately $16,500 in fees to Sonoran Capital Advisors, portions of which are either approved, or incurred but not yet approved (ECF docket 252); plus approximately $40,000 in my incurred and accruing, but not yet approved, fees.

13. In addition to the escalating administrative expenses, I have been informed that the attorneys fees which 988 has incurred to date, which I believe 988 will assert as a portion of its secured claim pursuant to §506(b), exceed $300,000, which includes services rendered both before and after this bankruptcy filing.

14. SRC's schedules list the value of the Property, which is SRC's primary asset, as $2,590,000. Based on information I have received from informal research through online sources and from knowledgeable real estate professionals, I have not received any credible information that supports the foregoing figure. I believe the value of the Property is more likely less than $2,000,000. 988 has informed me that it has received an appraisal of the Property indicating that the value is only $1,760,000, a value that would render this estate already administratively insolvent.

15. Pursuant to 11 U.S.C. §1189(a), only SRC can file a plan in this case.

## The Reasons For The Sale Request

The parties in this case are locked in an intractable cycle of litigation which has caused both administrative expenses and 988's secured claim to skyrocket while the value of the Property is impacted by an Arizona real estate market that is at best softening, and at worst, depreciating.[2] Moreover, as I have reported in past hearings, the monthly revenue reflected in SRC's monthly operating reports, is not sufficient to service or satisfy

---

[2] Local and national news sources now regularly report stories similar to those found at the following links: https://www.azfamily.com/2022/06/22/arizonas-hot-housing-market-is-cooling-quickly/; https://www.newsweek.com/housing-market-real-estate-mortgage-phoenix-arizona-interest-1722144; and, https://www.washingtonpost.com/business/2022/07/09/housing-market-slowdown-mortgage-rates/. While the foregoing are far from precise and focused indicators of the Property's value, I believe they accurately report a general trend that puts downward pressure on the Property's value.

those obligations through regular distributions under a plan of reorganization.

I believe the escalation of administrative expenses and 988's secured claim will continue to negatively impact the debt/equity equation in this case, especially considering that SRC is expected to soon file an amended plan that I believe will give rise to confirmation objections and a new round of significant litigation which will almost certainly culminate in a protracted and expensive evidentiary hearing. Finally, based on my discussions with SRC's principal and counsel to date, I have serious concerns as to whether SRC even can propose an amended plan that is economically feasible based on the *current* status of administrative expenses and secured claims (not to mention the sum total of those expenses by the time the Court adjudicates confirmation of any plan yet to be filed).

Section 1189 provides that only a debtor may file a plan in a Subchapter V case. At various times during the proceedings on the 988 Motion (which concluded on June 14, 2022) SRC's counsel represented on the record that SRC would be filing an amended plan after the 988 Motion was resolved. This Motion comes some two months after the date the Court entered the Trustee Order, and SRC has yet to file an amended plan.[3]

I believe a 363 Sale is my only realistic option to advance this case toward a final resolution and administration of SRC's estate that is in the best interest of the estate and all creditors. If this Motion is granted, I will inform potential renters of the Property about the marketing and sale process and the potential impact thereof on their rental reservations. To minimize the prejudicial delay to both SRC's estate and its creditors, I request that the Court initially set a hearing on as expedited a timeline as the Court deems appropriate, to consider and authorize a 363 Sale, and to approve the Procedures Request. As explained below, if the Court authorizes a 363 Sale, at a later date I will seek a hearing to request approval of any sale offer submitted to the Court or any higher and better offer

---

[3] In fairness, SRC has had discussions with both me and 988 about proposals for the terms of an amended plan. My statements herein should not be construed to imply that SRC has completely disregarded its promise to file an amended plan. However, in the final analysis, no amended plan is on file, which stalls the progress of this case.

5

made at such hearing (the "Sale Hearing").

## Liens Claimed Against SRC's Assets

There are only two creditors who assert liens against SRC's assets: i) 988; and, ii) the Yavapai County Treasurer. Based on my discussions with 988, I believe it will assert a secured claim that currently approaches, and possibly even exceeds, $1,800,000. I believe the Yavapai County Treasurer's claim is less than $15,000.

If 988's appraisal is accurate, the estate is already administratively insolvent, and I believe that insolvency will deepen as this case moves forward. Unfortunately, under the circumstances of this case, I believe a sale of the Property will best remedy that deepening insolvency.

## **THE SALE REQUEST**

In connection with the Sale Request, preliminarily I request that the Court enter an order authorizing me to market the Property for sale on the terms and procedure set forth herein. Unlike many 363 Sales, I seek authority to pursue a sale process that will not initially involve a stalking horse bidder. .[4] I believe SRC's estate will best be served by marketing the Property for an adequate period of time[5] at a fair market price to be set after consultation with real estate professionals engaged for the purpose of marketing and selling the Property.[6] Should those marketing efforts result in a cash offer, I will seek a Sale Hearing to approve the 363 Sale of the Property based on that (or any higher and better) offer; and, I will provide notice of any such Sale Hearing date, the details of the cash offer (essentially using it as a stalking horse bid), and any sale and bidding procedures approved by the Court, which are discussed below.

## Authority For The Sale of the Property

Bankruptcy Code § 363(b)(1), provides that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

---

[4]

[5] I am requesting a marketing period of 75 days.

[6] In connection with this Motion, I intend to file an application to employ such real estate professionals.

6

estate…" 11 U.S.C. § 363(b)(1). Although §363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of estate assets, courts have uniformly held that approval of a proposed sale of property under §363(b) is appropriate if the transaction is supported by sound business judgment. See *Committee of Equity Securityholders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); see also *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D.Del. 1991); *Stephens Indus. V. McClung,* 789 F.2d 386, 398-90 (6th Cir. 1986).

Courts have traditionally applied four factors in determining whether a sound business justification exists to authorize the sale of assets outside of the ordinary course: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is being provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See In re Delaware & Hudson Ry. Co.,* 123 B.R. at 175 (adopting the *Lionel* factors in determining whether sound business purpose exists for sale outside ordinary course of business).

I believe there is a sound business reason justifying a prompt sale of the Property. In summary, my options for administering this case to a conclusion are: i) a sale of the Property as described herein; ii) conversion of this case, which would either result in a similar sale of the Property or stay relief that would benefit 988 but no other party in interest; or, iii) a stay relief stipulation with 988, which again would not benefit the estate or creditors beyond 988. I cannot propose a Plan, and SRC has not yet done so. More importantly, I have serious concerns about whether SRC has the financial means to consummate any otherwise confirmable reorganization plan.

The other *Delaware* factors discussed above (fair and reasonable consideration, good faith, and adequate notice) will come into play if and when the marketing of the Property produces a cash offer that is presented to the Court for approval at a Sale Hearing. Most relevant at this preliminary stage, I believe there is a realistic likelihood that the Property may sell for a price that exceeds the current encumbrances against it,

7

thereby providing funds for distribution to secured, administrative and unsecured claimants. However, as explained above, the likelihood of surplus proceeds from any such sale becomes less likely by the day.

Bankruptcy Code § 363(f) authorizes a trustee to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if at least one of the following conditions is satisfied:

(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § § 363(f)(1) – (f)(5).

Here, several of the statutory predicates apply: state law, specifically Arizona's real property foreclosure statutes, would permit the sale of the property free and clear of liens (§363(f)(1))[7]; upon information and belief, 988 and the Yavapai County Treasurer will consent to the sale requested herein provided the sale price is adequate to satisfy their liens (§363(f)(2)); realistically, the sale price may exceed the amount of liens on the Property (§363(f)(3)); and, lienholders could be compelled to accept a money satisfaction of their liens in various legal or equitable proceedings (§363(f)(5)).

<u>Determination of Good Faith Purchaser</u>

Section 363(m) of the Bankruptcy Code provides that the reversal or modification on appeal of an order approving a sale under sections 363(b) or (c) does not affect the validity of a sale to an entity that purchased property in good faith, whether or not it knew of the appeal, unless the sale was stayed pending appeal. If the Court approves a

---

[7] With, of course, the proceeds of such a sale going first to lienholders.

8

successful bid at any sale hearing, if appropriate I will ask the Court to determine that the successful bidder is a good faith purchaser entitled to the protection of section 363(m).

In summary, as to the Sale Request I request that the Court enter an Order authorizing me to market the Property for sale on the terms and procedure set forth herein. Should those marketing efforts result in a cash offer, I will request a Sale Hearing to approve the 363 Sale of the Property based on that, or any higher and better offer, again in connection with the Procedures Request discussed below.

## THE PROCEDURES REQUEST

I also request that the Court enter an Order establishing the following procedures and parameters for marketing the Property, submission of bids to purchase the Property, and for the conduct of any Sale Hearing the Court may subsequently set if marketing the Property results in cash bids worthy of submission to the Court for approval:

A. <u>Assets to be Purchased.</u> The sale will include the Property, including all the real and personal property located at 700 North Page Springs Road in Cornville, AZ. The Property will be sold to the party who submits the highest and best offer in accordance with the bid procedures discussed below.

B. <u>Excluded Assets.</u> Only the Property will be sold. The 363 Sale will not include SRC's bank accounts, any causes of action that might be available to SRC, or any other property. If the purchaser elects to utilize the Property as a vacation rental and maintains future reservations, customer contracts and corresponding customer deposits will be assigned and transferred to the purchaser.[8]

C. <u>Liabilities Assumed.</u> Unless expressly agreed to by the purchaser, no liabilities will be assumed in connection with the 363 Sale of the Property.

D. <u>Purchase Price.</u> After consultation with real estate professionals engaged for the purpose of marketing and selling the Property, it will be marketed for a price calculated to be commensurate with its fair market value in the prevailing market. If those

---

[8] If necessary, I will seek authority from the Court to assume and assign those customer contracts and deposits.

marketing efforts result in a cash offer, I will request a Sale Hearing for the Court to consider and approve the offer or any higher and better offers. I will provide notice of the offer, any Sale Hearing set by the Court, and the solicitation of higher and better offers, to potential competing bidders and all parties in interest in this case. All bidders other than 988 will be required to post a refundable bidding deposit of $10,000.

E. <u>Sale Terms.</u> The 363 Sale will be a cash sale (with the exception of 988), "as is, where is" with no representations or warranties of any kind by SRC or the Subchapter V Trustee, with no carryback financing or contingencies, and the required closing date will be no later than 15 business days after the Court approves a 363 Sale at the highest and best bid submitted at or before the Sale Hearing. In regard to any such 363 Sale, 988 shall have the right to credit bid up to the amount of its allowed secured claim pursuant to §363(k). Except as otherwise agreed to by the successful bidder approved by the Court (hereinafter, the "Purchaser"), the 363 Sale of the Property will be free and clear of liens, encumbrances, charges, claims and interests of every kind and description, with any and all such liens, encumbrances, charges, claims and interests to attach to the proceeds of the sale in accordance with the Bankruptcy Code and otherwise applicable law.

F. <u>Termination Rights.</u> Except for a stalking horse bid, all offers or bids may be withdrawn at any time prior to approval of the 363 Sale for the highest and best bid by the Court. I reserve the right to cancel the 363 Sale process and withdraw this Motion at any time prior to the Court's final approval of the highest and best bid/offer.

G. <u>Stalking Horse Bid.</u> Any stalking horse bid shall be irrevocable, and binding and enforceable against the stalking horse bidder, subject only to the receipt of a higher and better bid, and the approval of the Court. No break-up fee will be paid. In order to induce any initial cash bidder to expend the time, energy and resources necessary to submit an attractive stalking horse bid, subject to request to and approval by the Court, I may offer any stalking horse bidder reimbursement of reasonable expenses incurred in the course of formulating and submitting a stalking horse bid, not to exceed $7,500.

10

48204291
Case 3:21-bk-04364-BKM    Doc 261    Filed 10/24/22    Entered 10/24/22 12:21:10    Desc
Main Document    Page 10 of 15

H.  **Bid Requirements.** Except as provided below, any person who wishes to participate in the bidding process must deliver to me, including through any real estate professional engaged to market the Property, the following no later than five days prior to any Sale Hearing the Court sets (not to include the date of the Sale Hearing itself):

i. A signed purchase agreement, the form of which will be drafted in cooperation with any real estate professional the Court approves and the estate engages in connection with the marketing and sale of the Property;

ii. A proposal reflecting the amount of their cash offer, which must confirm that the bid is a cash bid with no conditions or contingencies other than Court approval, and committing to pay the bid in full and close the transaction within 15 business days after the Court approves such bid as the highest and best offer for the Property;

iii. Written evidence of a commitment for financing or other evidence of adequate financial means to consummate a sale at the amount of the proposed bid;

iv. A refundable $10,000 deposit in the form of a certified bank check from a U.S. bank or by wire transfer (or other form I deem acceptable) payable to Sunlight River Crossing, LLC, which will be refunded to all unsuccessful bidders after the Court approves the highest and best bid/offer for the Property.

v. A bid will be considered only if the bid is unconditional, including without limitation, any financing contingency, any due diligence contingency, and any break-up or termination fee contingencies.

A bid meeting all of the foregoing requirements shall be considered a "Qualified Bid." A bidder who has satisfied all of the foregoing requirements shall be considered a "Qualified Bidder." 988 shall be deemed a Qualified Bidder, and shall be exempt from the requirements set forth above except as set forth in section H(v).

I.  **Due Diligence.** I will afford all potential bidders access to the Property.

11

Case 3:21-bk-04364-BKM    Doc 261    Filed 10/24/22    Entered 10/24/22 12:21:10    Desc
Main Document    Page 11 of 15

Potential bidders will otherwise be responsible to conduct their own due diligence regarding the Property.

J. <u>Bid Deadline.</u> Other than a bid by 988, all Qualified Bids must be made no later than five days prior to any Sale Hearing the Court may set to consider the highest and best offer for the Property and to approve any such sale.

K. <u>Conduct of Sale Hearing.</u> If I receive a cash offer for the Property that I believe justifies the Court's consideration, I will request that the Court set a Sale Hearing to conduct an auction of the Property upon notice to all bidders who have submitted bids, to all parties in interest in this case, and to all other third parties that I determine may be reasonably likely to be interested and have the financial ability to participate in an auction. I request that the parameters for any bids made at the Sale Hearing be limited as follows:

    i. Only a Qualified Bidder will be entitled to make a subsequent overbid at the auction hearing;

    ii. All Qualified Bidders will be entitled to be present at the auction hearing with the understanding that the identity of each Qualified Bidder will be fully disclosed to all other Qualified Bidders and that all material terms of each subsequent overbid will be fully disclosed to all other Qualified Bidders throughout the entire auction hearing.

    iii. The auction hearing will be subject to any other procedural rules the Court deems reasonable and may impose either in advance of, or during, the auction hearing, including but not limited to the amount of time allotted to make subsequent overbids.

    iv. Bidding at the Sale Hearing will begin with the highest Qualified Bid submitted in advance of the hearing, and continue in minimum increments of at least $25,000 higher than the previous bid. The auction will continue in one or

48204291
Case 3:21-bk-04364-BKM    Doc 261    Filed 10/24/22    Entered 10/24/22 12:21:10    Desc
Main Document    Page 12 of 15

|   |   |   |
|---|---|---|
| 1 |   | more rounds of bidding and will conclude after each |
| 2 |   | Qualified Bidder has had the opportunity to submit |
| 3 |   | subsequent bids and the highest and best bid is chosen. |
| 4 | v. | The second-highest and best bid designated by the Court at |
| 5 |   | the Sale Hearing will be offered the opportunity to commit |
| 6 |   | to a "backup bid," and to be deemed the successful bidder |
| 7 |   | in the event the initially successful bidder holding the |
| 8 |   | highest and best bid fails to close the sale transaction. The |
| 9 |   | backup bidder's bid will be a binding commitment in the |
| 10 |   | same manner as the successful, highest and best bid, |
| 11 |   | contingent only upon the holder of the highest and best bid |
| 12 |   | failing to close the transaction within 15 business days |
| 13 |   | after Court approval. |

L. <u>Selection Of Successful Bid.</u> At the conclusion of the auction conducted at the Sale Hearing the Court will identify the highest and best offer for the Property and the bidder making such bid (the "Successful Bidder"), and in the Court's discretion, approve the sale of the Property to the Successful Bidder in the amount of the successful bid. Upon Court approval, the Successful Bidder's bid will be irrevocable. The Property will be sold to the Successful Bidder for the amount of the successful bid approved by the Court at the Sale Hearing.

M. <u>Request For Sale Hearing.</u> The Sale Hearing will be held on a date and time set by the Court after subsequent request if the initial marketing of the Property results in a stalking horse cash offer that justifies the Court's consideration. If I do not receive any fair market value offers for the Property within 75 days after the Court approves the Procedures Request, I will not request a Sale Hearing, I will report the lack of bids to the Bankruptcy Court, and in that event I intend to withdraw (without prejudice) this request to sell the Property.

**CONCLUSION**

48204291
Case 3:21-bk-04364-BKM    Doc 261    Filed 10/24/22    Entered 10/24/22 12:21:10    Desc
Main Document    Page 13 of 15

For all the foregoing reasons, I request that the Court set a hearing at the earliest opportunity to:

    i)     Consider and enter an Order approving the Sale Request herein, specifically, to authorize me to market the Property for sale for a period of 75 days, and if such marketing efforts result in a cash offer, to request a hearing to approve the sale of the Property based on that cash offer or any higher and better offer; and,

    ii)     Consider and approve the Procedures Request set forth herein as it relates to the process for marketing and selling the Property.

I believe that expedited consideration of the foregoing is justified based on the escalating administrative and litigation expenses described herein, along with the receding market conditions that negatively impact the value of the Property.

RESPECTFULLY SUBMITTED October 24, 2022.

By: */s/ Joseph E. Cotterman*
    Joseph E. Cotterman
    5232 West Oraibi Drive
    Glendale, Arizona 85308
    *SubChapter V Trustee*

Filed on October 24, 2022, via the Court's CM/ECF filing system and a copy of the foregoing emailed this same date to:

Frank W. DiCastri
REINHART BOERNER VAN DEUREN S.C.
fdicastri@reinhartlaw.com
Counsel for 988, LLC

Bryan W. Goodman
GOODMAN & GOODMAN, PLC
bwg@goodmanadvisor.com
Counsel for 988, LLC

Patrick Keery
KEERY MCCUE, PLLC
6803 East Main Street, Suite 1116
Scottsdale, AZ 85251
pfk@keerymccue.com

14

48204291
Case 3:21-bk-04364-BKM    Doc 261    Filed 10/24/22    Entered 10/24/22 12:21:10    Desc
Main Document    Page 14 of 15

| | |
|---|---|
| 1 | Counsel for Sunlight River Crossing, LLC |
| 2 | Patty Chan |
|   | OFFICE OF THE UNITED STATES TRUSTEE |
| 3 | 230 N. First Ave., #204 |
|   | Phoenix, AZ 85003 |
| 4 | patty.chan@usdoj.gov |
| 5 | /s/ *Joseph E. Cotterman* |

48204291